Eve H. Cervantez (SBN 164709)
ecervantez@altshulerberzon.com
Connie K. Chan (SBN 284230)
cchan@altshulerberzon.com
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile : (415) 362-8064

Stephen R. Basser (SBN 121590)
sbasser@barrack.com
Samuel M. Ward (SBN 216562)
sward@barrack.com
**BARRACK RODOS & BACINE**
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874

Additional Counsel on Signature Page

*Attorneys for Plaintiff C.P.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.P., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Meta Platforms, Inc., (a California Corporation)<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff C. P., ("Plaintiff" or "C.P."), on behalf of himself and all others similarly situated, alleges as follows upon personal knowledge as to his own conduct and on information and belief

1

as to all other matters, based on investigation by counsel, such that each allegation has evidentiary support or is likely to have evidentiary support upon further investigation and discovery.

## I.     NATURE OF THE ACTION

1.      This is a putative class action brought by Plaintiff on behalf of himself and millions of other Americans against Defendant Meta Platforms, Inc., f/k/a Facebook, Inc., ("Meta" or "Facebook," "Company," or "Defendant") arising from Defendant's violation of the sacrosanct privacy and confidentiality of personal tax return and related financial information via collecting, storing, exploiting for financial gain, and intercepting electronic communications on major online tax filing services and websites such as H&R Block, TaxSlayer, and TaxAct. Defendant effectively wiretaps Plaintiff and millions of other class members and collects and transmits their sensitive and confidential tax return and related financial information when they file their taxes online through such tax filing services.

2.      This wiretapping, transmission and collection of data by Defendant is done without the knowledge and informed consent or authorization of Plaintiff and Class members herein and is in violation of Defendant's own representations as well as state and federal laws.

3.      Meta's unlawful interception, transmission, collection, and exploitation of confidential and private data is accomplished by use of a device referred to as the Meta Pixel or Facebook Pixel ("Pixel") which is embedded in the JavaScript of the online tax preparation website. Said Pixel resides on the portal login page and is part of a complement of "business tools" Meta offers to website owners. The Pixel source code effectively causes the content of communications with the online tax filing services to be intercepted and redirected to Defendant. This occurs whenever a consumer communicates with the financial services or tax filing provider website. The Pixel even gathers information from website visitors who do not have a Facebook account.

4.      Plaintiff and millions of class members herein are unaware that, upon signing up with an online tax provider, their information is being secretly and surreptitiously communicated to Meta, which, in turn, shares that information for profit with third parties.  The Pixel secretly deployed on the webpage of the online tax service provider surreptitiously sends user data to

CLASS ACTION COMPLAINT

Defendant once the users click and sign into the portal. The user data that the Pixel causes to be redirected to Defendant includes highly confidential tax information and financial information respecting Plaintiff and class members, including not only their names, email addresses, dependent names and other personal information, but also their income tax filing information, refund amounts, amounts that they owe to the IRS, if any, and additional sensitive financial information.

5.     This highly sensitive, private and confidential tax information and related financial information is conveyed to Defendant via the Pixel, despite the fact that neither Meta, nor the online tax filing service providers, have obtained adequate or informed consent from consumers, including Plaintiff, allowing such information to be intercepted, stored, collected, exploited for profit, or otherwise transmitted to or by Meta.

6.     As a consequence of surreptitiously obtaining such information by reason of the Pixel, Defendant is able to monetize the information that is deployed on tax filing service web properties and use that information to secure and otherwise generate advertising revenue from advertisers who target consumers based on specific actions that they have taken on the providers' websites, and based upon confidential information about them that Defendant intercepts, collects, and transmits via the Pixel.

7.     It is well understood by Defendant that tax return information is confidential and that disclosing tax–return information without the consent of the taxpayer is unlawful. *See, e.g.*, 26 U.S.C. §7216. Aiding and abetting the unlawful disclosing of tax return information also constitutes a crime, as does inspecting unlawfully obtained tax return information. *See* 26 U.S.C. §7213 A (a)(2).

8.     Plaintiff, individually and on behalf of all other persons similarly situated, brings this action arising from taxpayers' use of online tax preparation providers such as H&R Block, TaxSlayer, and TaxAct, whose websites had the Pixel installed therein. This action seeks to certify a nationwide class and a subclass of citizens of the State of New York who use such websites, and asserts causes of actions for Defendant's violations of state and federal wiretapping laws and

CLASS ACTION COMPLAINT

applicable statutes, California statutory consumer protection laws, and those arising under common law.

## II.    PARTIES

9.      Plaintiff C.P.  is a citizen and domiciliary of the state of New York who resides in Erie County, New York. Plaintiff used H&R Block, Tax Slayer, and TaxAct online tax filing services for a number of years, through which his tax returns for 2021 and prior years were filed online with the Internal Revenue Service. The online tax filing services Plaintiff utilized secretly deployed the Pixel that intercepted and collected his private, sensitive, and confidential financial information.  Plaintiff, at all times material, maintained a Facebook account.  Plaintiff has not and did not consent to the disclosure of his private, confidential tax return information and related financial information provided to those online taxpayer providers or services, except with regard to disclosure to the Internal Revenue Service.

10.      Defendant Meta is a California corporation headquartered in Menlo Park, California, previously known by the name "Facebook." Defendant, which does business throughout California, the United States, and across the world, derives substantial economic benefit from its interstate commerce, including by reason of interception and collection of personal financial information associated with online tax returns by reason of its Pixel.

## III.    JURISDICTION AND VENUE

11.      This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member is a citizen of a state different from Defendant. This court also has federal subject matter jurisdiction under 28 U.S.C. § 1331 with respect to claims for the violation of Federal law and statute, including, but not limited to, the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq*.

12.      The Northern District of California has personal jurisdiction over the Defendant named in this action because Defendant's headquarters is located within the District and

Defendant conducts substantial business in the District through its headquarters, offices, and/or affiliates.

13.     Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant and/or its parents or affiliates are headquartered in this District.

## IV.    FACTUAL ALLEGATIONS

### A.    Plaintiff and Class Members Reasonably Expect Privacy and Confidentiality with Respect to Their Tax Return Filings and Information.

14.     Meta operates and controls Facebook.com. Meta is now the world's largest social media company. In 2021, Meta generated $117 billion in revenue, of which approximately 97% was derived from selling advertising, which it accomplishes by highlighting its ability to target users.

15.     Users of online tax filing services reasonably expect that their tax information and related financial information will not be shared without their affirmative consent. Individual freedom from unauthorized or unwarranted intrusion into one's financial privacy is highly valued, especially with respect to tax returns. The confidentiality of one's tax return is viewed as a sacred right.

16.     The right of privacy is also viewed as a sacred right. Reflecting its importance, California – where Defendant is incorporated and headquartered – has adopted privacy laws that prohibit and render unlawful unauthorized interception or recording of confidential communications, which necessarily includes the unlawful interception, recording, use, or transfer of confidential tax return and related financial information.

17.     The right of privacy is further guaranteed by Article I, Section I of the California Constitution, which provides:

> All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and ***privacy***"
> (Emphasis added).

18.     The phrase "and *privacy*" was added in 1972. The legislative intent in doing so was to curb business' control over the unauthorized collection and use of consumers' personal information. The legislative record states:

> The right of privacy is the right to be left alone… it **prevents** government and **business interests from collecting and stockpiling unnecessary information about us** and from misusing information gathered for one purpose in order to serve other purposes in order to embarrass us. Fundamental to our privacy is the ability to control circulation of personal information. This is essential to social relationships and to personal freedom.  (Emphasis provided).[1]

19.     Various studies regarding the collection of consumers' personal data confirm that the surreptitious taking of user data – and herein especially confidential tax return and related confidential financial information – violates expectations of privacy that have been established as general social norms.

20.     An overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent for a company that collects and shares personal data. A Consumer Reports study found that 92% of Americans believe that internet companies should be required to obtain consent before selling or sharing their data, and the same percentage of Americans believe internet companies should be required to provide consumers with a complete list of the information collected about them.[2]  Here, Defendant's conduct in surreptitiously securing tax return information and related financial information therein, is far worse than simply collecting non-financial user information, such as names and email addresses.

21.     Defendant's interception and data collection respecting Plaintiff's and class members' tax return and related tax information from filings with online tax preparers and

---

[1]     Ballot Pamphlet, Proposed Stats. & Amends. to Cal. Const. With Arguments to Voters, Gen. Election *26 (Nov. 7, 1972).

[2]     Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety-a3980496907/, last visited on February 16, 2023.

CLASS ACTION COMPLAINT

services, and enabling the transmission, interception, or sharing of that information without their consent, is a fundamental violation of the law and expectations of fundamental privacy that shocks the conscience.

**B.    Defendant's Unlawful Interception and Disclosure of Tax Return Information**

22.    Meta's interception, review, use, or transmission of Plaintiff's and class members' tax return and related financial information therefrom – tax filers' data constituting "User Data" herein – violated Federal law and protections regarding confidentiality of tax return information thereunder. As provided by 28 U.S.C. § 7216, a crime is committed whenever *any* business that "prepar[es] or provid[es] services in connection of preparation of" federal tax returns "discloses any information furnished to him for, or in connection with, the preparation of any such return", or "uses any such information for any purpose other than to prepare, or assist in preparing, any such return".[3]

23.    While there are circumstances in which a tax preparer may disclose or use tax-return information, including by providing that information to third parties, this can only be done where valid consent is secured.  *See* 26 CFR § 301.7216-2.[4]  However, that circumstance does not apply here to exempt Defendant's unlawful conduct.

24.    No exemption exists under the laws or regulations enumerated by Congress or the Internal Revenue Services that permits or otherwise allows Defendant, or online tax service portals or internet portals, to intercept, transmit, and share taxpayers' tax return information.

25.    Informed consent cannot be retroactive. In fact, "a taxpayer must provide written consent *before a tax return preparer discloses or uses the tax payers return information*" to

---

[3]    Tax return "information" means "*any information*, including, but not limited to, a tax payers name, address or identifying number, which is furnished in any form or manner for, or in connection with, the preparation of a tax return of a tax payer." 26 C.F.R. § 301.7216-1(b)(3) (emphasis added).

[4]    Additionally, a tax preparer may disclose tax return information even absent the taxpayers' consent in response to a lawfully issued subpoena or other lawful process. See 26 C.F.R. § 301.7216-2.  No such exemption applies here.

7

1    third parties other than the Internal Revenue Service. *See* 26 C.F.R. § 301.7216-3(b).  Plaintiff

2    and Class members did not provide consent for their information to be intercepted by, provided

3    to, used by or shared with Facebook.

4
5           **1.    Meta Makes Promises It Fails to Keep Regarding Taxpayers'
                    Financial Information.**

6           26.    Facebook users are "required" to agree to Meta's Terms of Service, Data Policy,

7    and Cookie Policy ("Meta's Data Policy"), via a checkbox on their account signup page.

8           27.    Meta's Data Policy – sometimes referred to herein as the Facebook Data Policy –

9    provides that Meta "requires" businesses using its Pixel, (more fully discussed below), "to have

10   lawful rights to collect, use and share your data before providing any data to [Facebook]".

11   Claiming that "[i]t is against [Meta's] policies for websites and apps to send sensitive information

12   about people through [Meta's] Business Tools", user consumers are assured that Defendant will

13   filter out sensitive data it detects.  Meta's advertising policy states "[we] do not use sensitive

14   personal data for ad targeting." While this verbiage sounds comforting, the reality in practice is

15   quite disturbing.

16          28.    In truth, Defendant does not "require" financial service providers to have lawful

17   rights to share tax data with their associated respective websites and online portals prior to it being

18   sent to Facebook. Instead, Defendant creates an "honor system," whereby its form contract with

19   providers states that by using Facebook Business Tools, the publisher "represent[s] and warrant[s]

20   that [it has] provided robust and sufficient prominent notice to users regarding Business Tools

21   Data collection, sharing usage." In reality, Defendant does not verify consent with regard to

22   publishers in the United States. Nor does Meta verify that advertisers have obtained adequate

23   consent from users before transmitting their sensitive data.

24          29.    The Pixel, in total contravention of Meta's promises, is made available to any

25   willing publisher regardless of their privacy policies, consent processes, or the nature of their

26   business. This blind provision of the Pixel does not filter sensitive data it receives. Meanwhile,

27   Defendant's contract with tax preparers and online financial services providers governing use of

28   the Pixel does not even mention Federal laws relating to the sharing of tax return information at

8

all.  Nor does Defendant take any action to discourage online tax preparers from using the Pixel. To the contrary, financial services providers and online tax preparers, such as H&R Block, TaxSlayer, and TaxAct, are encouraged by Defendant to use the Pixel for their marketing campaigns.

30.     While the terms of use for Facebook's Business Tools purport to prohibit app developers and other third parties from sending Facebook "Customer Data …that you know or reasonably should know… includes…*financial* information, or other categories of sensitive information (including any information defined as sensitive under applicable law)," the practice and reality is contrary.  For example, Facebook representatives have admitted to New York State Department of Financial Service ("NYDFS") investigators that the Company routinely obtains sensitive data from app developers in violation of its own policy.   The NYDFS has noted that Facebook did indeed "receive, store, and analyze sensitive data," that "Facebook internal controls in this issue have been very limited and not were not effective in enforcing Facebook's policy, or preventing the receipt of sensitive data," and that "Facebook has repeatedly rebuffed NYDFS's efforts to obtain information that would have provided more fulsome transparency with respect the scope and scale of the problem," adding that Defendant "has failed to provide sufficient detail about, among other things, specifically what kind of sensitive information was obtained, how regularly it was received, or which app developers violated the rules by transmitting such information."

31.     NYDFS further noted that "Facebook does little to track whether app developers are violating this rule and takes no real action against the developers that do," while adding that it finds that Facebook's "efforts" were "seriously lacking" and recommending that it "undertakes significant additional steps to police its own rules."

32.     Actions speak louder than words.  Defendant's actions continue to defy and contradict its words and supposed or claimed policies, further proving and reinforcing the reality that its true policy was, and is, to continue to collect sensitive and confidential private data and financial information, including taxpayer information, unlawfully and in violation of its own stated policies.

33.     In an article issued by Motherboard, the technology reporting arm of Vice.com, entitled "ABP Privacy, Long Range Investments (2021)," the media news outlet published a leaked internal memo in April 2022 revealing what Meta's data gathering operation was really doing in practice.[5] According to the Motherboard disclosure and related leaked internal memorandum, Meta's engineers who had analyzed the Company's privacy infrastructure insisted on "long-range investments" by reason of mounting regulatory and legal scrutiny, including statements that "[we] do not have adequate level of control" and "can't confidently make controlled policy changes or external commitments such as we will not use X data Y purpose," adding that "if we can't enumerate all the data we have – where it is; where it goes; how it's used – then how can we make commitments to the outside world?"

34.     Meta's engineers analyzing privacy infrastructure noted in the leaked internal memorandum published by Motherboard that the Company had "built systems with open borders", the result of which:

> . . . is well described with an analogy: Imagine you hold a bottle of ink in your hand. This bottle of ink is a mixture of all kinds of user data … [*i.e.*, sensitive consumer Data…]. You pour that ink into a lake of water (our open data systems; our open culture)… and it flows everywhere. How do you pour that ink back into the bottle? How do you organize it again, since it only flows to the allowed places in the lake?

35.     In a separate article, Motherboard made consistent and wholly appropriate conclusions noting that "there is a data free-for-all inside Facebook and the Company has no control over the data it holds" which was something that experts "long expected."[6] Given the foregoing, it is evident that via its Pixel, Meta knowingly collects sensitive data and violates federal laws with respect to tax return information, and fails to stop doing so or provide adequate controls that guard against doing so.

---

[5]     https://www.documentcloud.org/documents/21716382-facebook-data-lineage-internal-document, last visited on February 16, 2023.

[6]     Motherboard, Facebook doesn't know what it does with your data or where it goes: leaked document (2022),  available at https://www.vice.com/en/article/akvmke/facebook-doesnt-know-what-it-does-with-your-data-or-where-it-goes?utm_source=motherboard_twitter, last visited on February 16, 2023.

**2. The Functioning of the Pixel that Intercepts and Transmits Confidential Tax Return and Related Financial Information Without Consent**

36.     Facebook produces profits from social media advertising. Defendant's revenues are derived almost entirely from selling targeted advertising to users on Facebook.com and other sites that deploy Facebook's marketing source code.

37.     Facebook Business is a corporate division of Defendant that provides advertising services to developers using advertising tools it provides that are focused on trade and commerce. One of the tools is Defendant's Pixel technology – a "piece of code" introduced in 2015 that enables developers to "measure, optimize and build audiences for…ad campaigns."[7]

38.     The Pixel is computer code, created by Facebook for each developer that installs it. The Pixel records the activity of users on all of the sites on the internet in which it is deployed, and effectively transmits information or logs reflecting that activity back to Defendant. Facebook recommends that the Pixel code be integrated early on in the source code established on a developer's given webpage or website.  This further ensures that each user will be tracked.

39.     Facebook further recommends that its customers "place the Facebook pixel base code on all pages of your website."[8] Facebook is well aware that doing so can capture sensitive information, stating that its customers "can use the Facebook Pixel to: . . . . [r]each people . . . . making a purchase from your virtual campaign store, making a donation on your website or signing up for a government service."[9]

40.     To that end, Facebook designed the Pixel in order to enable it to immediately secure information about taxpayers' actions on each online taxation service's portal/internet site.

41.     Defendant provides the Pixel to its third party advertisers without charge. It instructs them on how to use the Pixel. Once the Pixel is deployed by the advertiser and set up *as*

---

[7]     https://www.facebook.com/business/learn/facebook-ads-pixel, last visited on February 16, 2023.

[8]     https://www.facebook.com/gpa/blog/the-facebook-pixel, last visited on February 17, 2023.

[9]     *Id.*

CLASS ACTION COMPLAINT

*instructed by Defendant*, it starts to collect and share information as soon as a consumer takes any action on a Pixel-enabled webpage, which sharing and interception of information effectively enables Defendant to receive logs of user actions in real time as the user is interacting with the target website. As noted above, Facebook specifically instructs users to place Pixel on pages designed to capture highly sensitive information. Facebook even goes so far as to instruct users to "add [the Pixel] base code between the opening and closing <head> tags" which "reduces the chances of browsers or third-party code blocking the Pixel's execution. It also executes the code sooner, increasing the chance that your visitors are tracked before they leave your page."[10]

2.       Just as it intends, Defendant receives information of the customer's online portal or website communications immediately, once that user clicks the log-in button, and continues to receive such information when the financial services provider receive it.

42.       Defendant effectuates its information gathering, which it then uses to create consumer dossiers, through the vehicle of a "c_user cookie," a means of identification for users of Meta's platforms. Every Meta user account has a unique c_user cookie which is used by the Company to record and organize their activities and communications.

43.       The c_user cookie is the equivalent of a user identification number, which each user account possesses and which is unique to the user. It is essential to Defendant's recording of user activities and communications.

44.       Facebook has expressly admitted that the Pixel "log[s] when someone takes an action" such as "adding an item to their shopping cart or making a purchase".

45.       When a user visits a third party domain that is Pixel enabled, Defendant thereafter effectively collects the user's information that includes among other things, pages that are visited, buttons clicked, options selected, various subjects of things that are typed by the user, and enjoys vast capabilities collecting a large range of user data.

46.       In an effort to enhance its tracking abilities, Meta added additional functionality in May 2017 to transmit even more information, including "actions on your page" and additional

---

[10]       https://developers.facebook.com/docs/meta-pixel/get-started/, last visited on February 17, 2023.

information about the website's structure in order to better understand the context associated with the actions that it was tracking. Every installed Pixel automatically implemented the enhancement, even ones that were installed before the enhancements were made available.

47.     Meta has acknowledged that "when someone visits your website and takes action … the Facebook Pixel is triggered and reports this action." Indeed, Meta source code actually causes the user's device to re-direct the content of their communications to Meta as communications between user and the website occur.

48.     Interception and collection of information from the Pixel occurs regardless of whether users are logged onto Facebook.com, and irrespective whether the user has even registered for a Facebook account. In this process, Meta intercepts and collects the information, analyzes it, and then assimilates it into databases.

49.     Notably, this Pixel technology is offered to companies for free. That is because Defendant benefits from doing so. While the technology may be provided for free, the data that it intercepts allows Meta to collect and amass detailed dossiers or digital fingerprints of users and other website visitors. The scope of this data collection is massive. Once the c__user consumer dossier is created, Defendant can populate it with information compiled from multiple sources, allowing it to combine, for example, the taxpayer data identified herein with additional data such as a user's real name, their location, their friends, and the IP addresses and device identifiers of their computers and cellular phones.  Defendant uses the data it collects from the Pixel to increase its ad revenue. And the dossier that Defendant compiles on persons who do not have an account on its platform, but nonetheless have their activities and data logged by virtue of the Pixel, are known as "shadow profiles". Mark Zuckerberg himself has confessed "[W]e collect data on people who have not signed up for Facebook for security purposes."

50.     While the entire scope of how Meta organizes and uses information about non-users is yet to be discovered, Plaintiff is informed and believes and thereupon alleges that it shall likely be fully uncovered in the course of reasonable discovery.

3.     **Repeated, Ongoing Collection of Confidential Tax Return and Consumer Financial Data Respecting Many Millions of Americans in Violation of the Law**

51.     The Pixel, introduced in 2015 and used by tax filing services such as H&R Block, TaxSlayer, and TaxAct, has, for some time, quietly transmitted sensitive financial information to Meta as users file their taxes online with these tax service providers.

52.     The type of intercepted and exploited data may include names, email addresses, filers' incomes, filing statuses, refund amounts, dependents' college scholarships, filers' health saving account usage, phone numbers, filers' names and name of dependents added to their return. For tax year 2021, tens of millions of tax returns were filed online. Collectively H&R Block, TaxSlayer, and TaxAct, which are some of the most widely used e-filing services that had the Pixel deployed on their websites, filed returns for many millions of people.

53.     Defendant knew at all times material – and certainly, at a minimum, had to have known or deliberately and recklessly disregarded with a blind eye – that its Pixel was intercepting, receiving, collecting, storing, and transmitting to others, without user consent, the confidential and private financial and tax information of users who filed their tax returns with the I.R.S. online via the online tax service providers such as H&R Block, TaxSlayer, and TaxAct.

54.     Revelations about Meta's tax-gathering practices began to surface in a report by The Markup in an article entitled "*Tax Filing Websites Have Been Sending Users' Financial Information to Facebook*" on November 28, 2022.

55.     According to The Markup November 28, 2022 article:

> Major tax filing services such as H&R Block, TaxSlayer, and TaxAct have been quietly transmitting sensitive financial information to Facebook when Americans file their taxes…including data on users' income, filing status, refund amounts and dependents college scholarship amounts,

56.     The instances when information has been gathered unlawfully by Facebook via its Pixel from H&R Block, TaxSlayer, and TaxAct numbers in the tens of millions.  Defendant has invaded the privacy and lawful rights of taxpayers over many years.  This is a result of the Pixel

14

being embedded on tax-filing service websites and the consequent surreptitious interception of user information as alleged above.

## TOLLING

57.     Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of the privacy violative conduct and related omissions alleged herein. Through no fault or lack of diligence, Plaintiff and members of the Class were deceived and could not have reasonably discover Defendant's unlawful conduct.

58.     Plaintiff and members of the Class did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendant was acting unlawfully and in the manner alleged herein and Plaintiff and members of the Class could not have discovered through the exercise of reasonable diligence the alleged wrongful conduct within the time period of any applicable statutes of limitations.

59.     At all times, Defendant is and was under a continuous duty to disclose to Plaintiff and members of the Class the true nature of the disclosures of confidential private and financial information being made, and the lack of receiving any required consent before the data was shared with it.

60.     Defendant knowingly, actively, affirmatively, and/or negligently concealed the facts alleged herein.   Plaintiff and members of the Class reasonably relied on Defendant's concealment.

61.     For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendant's concealment, and Defendant is estopped from relying on any statutes of limitations in defense of this action.

## <u>CLASS ALLEGATIONS</u>

62.     Plaintiff brings this class action on behalf of himself and on behalf of others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, as more fully alleged below.

CLASS ACTION COMPLAINT

63.     The Nationwide Class that Plaintiff seeks to represent ("Nationwide Class") is defined as follows:

> **All persons in the United States who utilized online tax preparation service providers H&R Block, TaxSlayer, or TaxAct, while those providers' websites had the Facebook Pixel installed or embedded on or within them.**

64.     Plaintiff C.P. also seeks to represent a New York Class (the "New York Sub-Class") defined as follows:

> **All persons in the State of New York who utilized online tax preparation service providers H&R Block, TaxSlayer, or TaxAct, while those providers' websites had the Facebook Pixel installed or embedded on or within them.**

65.     The Nationwide Class, and the New York Sub-Class, are sometimes also collectively referred to herein as the "Class."

66.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

67.     Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

68.     Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are millions of individuals whose private or confidential tax return or related financial information therein was improperly accessed as alleged above, and each Class Member is identifiable and ascertainable.

69.     Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

> a.     Whether Defendant utilized Pixel, installed on tax service provider websites, to intercept and transmit taxpayer information to Facebook;

16

b.   Whether, and to what extent, Defendant was responsible for the protection of Plaintiff's and Class Members' private information;

c.   Whether Defendant disclosed the Plaintiff's and Class Members' private information to third parties;

d.   Whether Defendant allowed Plaintiff's and Class Members' private information to be accessed or intercepted by third parties;

e.   Whether Defendant had a duty not to allow Plaintiff's and Class Members' private information to be intercepted, stored, transmitted, revealed, or used for unauthorized purposes;

f.   Whether Defendant failed to adequately safeguard or protect Plaintiff and Class Members from the interception, collection, and unauthorized use of their private information;

g.   Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their private information had been or was being intercepted, tracked, accessed, used, provided to, or transmitted to Defendant by third parties without the consent of Plaintiff and the Class Members;

h.   Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their private information had been intercepted, tracked, accessed, used, provided to, or transmitted to, Defendant by third parties without the consent of Plaintiff and the Class Members;

i.   Whether Defendant engaged in unfair, unlawful, or deceptive practices by tracking, intercepting, transmitting, accessing, or using Plaintiff's and Class members' private financial information;

j.   Whether Defendant's actions violated the California Constitution;

k.   Whether Defendant's actions violated California Penal Code § 632;

l.   Whether Defendant's actions violated Cal. Bus. & Prof. Code § 17200, *et seq.*;

m.    Whether Defendant's actions violated 18 U.S.C. § 2510, *et seq.*;

n.    Whether Defendant's actions violated 18 U.S.C. § 2511(3)(a); and

o.    Whether Defendant's actions violated 18 U.S.C. § 2702, *et seq.*

70.    Plaintiff's claims are typical of those of other Class Members because Plaintiff and Class Members all had their private taxpayer information compromised by Meta and/or unauthorized third parties.

71.    This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's conduct challenged herein applies to and affects Class Members uniformly and Plaintiff's claims hinge on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

72.    Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages Plaintiff has suffered are typical of other Class Members. Plaintiff has also retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

73.    Class action litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against a large corporation, like Defendant. Further, even for those Class Members who

18

could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

74.     The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage and be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the causes of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

75.     The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

76.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

77.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein as more fully recited heretofore and with respect to uniform statutory provisions of state and federal law.

## COUNT I

### Invasion of Privacy
### (On Behalf of Plaintiff and the Nationwide Class)

78.     Plaintiff, on behalf of the Nationwide Class, re-alleges all of the foregoing allegations as if fully set forth herein.

19

79.   The right to privacy in California's Constitution creates a universal right of action against California corporate entities such as Meta.

80.   A principal purpose of this constitutional right is to protect against unnecessary information gathering, use, and dissemination by public and private entities, including Meta, a California corporation.

81.   To plead a California constitutional privacy claim, a plaintiff must show an invasion of (1) a legally protected privacy interest; (2) where the plaintiff had a reasonable expectation of privacy in the circumstances; and (3) conduct by the defendant constituting a serious invasion of privacy.

82.   As described herein, Meta has intruded upon the following legally protected privacy interests:

   a.   The California Wiretap Act as alleged herein;

   b.   A Fourth Amendment right to the privacy of personal data contained on personal computing devices, as explained by the United States Supreme Court in the unanimous decision of *Riley v. California*;

   c.   The California Constitution's guaranteed right to privacy; and

   d.   The confidentiality and privacy of filers' tax returns and information therein.

83.   Plaintiff had a reasonable expectation of privacy under the circumstances in that Plaintiff could not have reasonably expected that Meta would commit acts in violation of civil and criminal laws; and in contradiction of its own representations and promises respecting privacy.

84.   Meta's actions constituted a serious invasion of privacy in that it:

   a.   Invaded a zone of privacy protected by the Fourth Amendment, namely the right to privacy of tax return data filed online and contained on electronic computing devices, as specified herein;

20

b.    Violated state criminal laws on wiretapping and invasion of privacy, including the California Invasion of Privacy Act;

c.    Invaded the privacy rights of many millions of American online filer taxpayers, without their consent; and

d.    Constituted the unauthorized taking of valuable information from many millions of Americans through deceit.

85.    Committing criminal acts against many millions of Americans constitutes an egregious breach of social norms that is highly offensive.

86.    The surreptitious and unauthorized interception, collection, storage, and sharing of the confidential tax return filings, and related financial information of millions of Americans, constitutes an egregious breach of social norms that is highly offensive.

87.    Meta's surreptitious and intentional intrusion into, and interception and usage of, Plaintiff's tax return communications via its Pixel was highly offensive to a reasonable person in that Meta violated state criminal and civil laws designed to protect individual taxpayer privacy and against theft.

88.    The deceptive and surreptitious taking of tax return related financial and identifiable information from millions of Americans filing their returns online through an online tax preparation service provider is highly offensive behavior.

89.    Secret monitoring and interception of confidential, private tax returns and related financial information is highly offensive behavior.

90.    Wiretapping and surreptitious recording of confidential protected communications is highly offensive behavior.

91.    Meta's surreptitious conduct lacked a legitimate business interest.

92.    Plaintiff and the Class members have been damaged by Meta's invasion of their privacy and are entitled to just compensation and injunctive relief.

1

2

## COUNT II

3

**Violation of The Electronic Communications Privacy Act ("ECPA")**
**18 U.S.C. § 2510, *et seq*.**
**(On Behalf of Plaintiff and the Nationwide Class)**

4

5

93.     Plaintiff, on behalf of the Nationwide Class, re-alleges all of the foregoing

6

allegations as if fully set forth herein.

7

94.     A violation of the ECPA occurs where any person "intentionally intercepts,

8

endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any …

9

electronic communication" or "intentionally discloses, or endeavors to disclose, to any person the

10

contents of any … electronic communication, knowing or having reason to know that the

11

information was obtained through the [unlawful] interception of a[n] … electronic

12

communication" or "intentionally uses, or endeavors to use, the contents of any … electronic

13

communication, knowing or having reason to know that the information was obtained through the

14

[unlawful] interception of a[n] … electronic communication." 18 U.S.C. §§2511 (1)(a), (c) – (d).

15

95.     In addition, "a person or entity providing an electronic communication service to

16

the public shall not intentionally divulge the contents of any communication [ ] while in

17

transmission on that service to any person or entity other than an addressee or intended recipient

18

of such communication or an agent of such addressee or intended recipient." 18 U.S.C. § 2511

19

(3)(a).

20

96.     As defined in 18 U.S.C. § 2510 (12), "electronic communication" means "any

21

transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted

22

in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo optical system that

23

affects interstate or foreign commerce."

24

97.     As defined in 18 U.S.C § 2510(4), "intercept" means "the aural or other acquisition

25

of the contents of any wire, electronic, or oral communication through the use of any electronic,

26

mechanical, or other device."

27

98.     As defined in 18 U.S.C § 2510(8), "contents" includes "any information relating

28

to the substance, purport, or meaning" of the communication at issue.

99.     As defined in 18 U.S.C § 2510(15), an "electronic communication service" means "any service which provides to users thereof the ability to send or receive wire or electronic communications.

100.    18 U.S.C. §2520(a) provides a private right of action to any person whose wire, oral, or electronic communication is intercepted.

101.    Plaintiff's and the Class members' use of online tax return services and online filings, including via the Facebook platform, constitute electronic communications under the ECPA.

102.    Meta's online platform and related apps and offerings, including the online tax preparer service providers, constitute an electronic communication service under the ECPA.

103.    Whenever Plaintiff and Class members interacted with online taxpayer provider services for filing their tax returns online, including with the use of its Pixel, any Facebook account, Defendant contemporaneously and intentionally intercepted, and endeavored to intercept, Plaintiff's and Class members' electronic communications without their authorization or consent.

104.    When Plaintiff and Class members interacted with online taxpayer service providers, Facebook tracked, intercepted, stored, and used the contents of Plaintiff's and Class members' online tax return electronic communications without their authorization or informed consent, knowing or having reason to know that the electronic communications was so tracked, intercepted, obtained, used or disclosed, in violation of the ECPA.

105.    When Plaintiff and Class members interacted as discussed above, Defendant tracked, intercepted, and intentionally used, and endeavored to use the contents of Plaintiff's and Class members' online tax return and related financial information electronic communications, for Meta's financial purposes, without their authorization or consent, knowing or having reason to know that the electronic communications were obtained in violation of the ECPA.

106.    When Plaintiff and Class members interacted with online taxpayer service providers, as alleged above, Defendant contemporaneously and intentionally redirected the contents of Plaintiff's and Class members' intercepted electronic communications and

information to persons or entities other than an addressee or intended recipient of such communication.

107.    When Plaintiff and Class members so interacted, as alleged above, Defendant intentionally divulged the contents of Plaintiff's and Class members' intercepted electronic communications, to persons or entities other than an addressee or intended recipient of such communication.

108.    Defendant intentionally intercepted and used the contents of Plaintiff's and Class members' aforesaid electronic communications for the unauthorized purpose of disclosing and profiting from Plaintiff's and the Class's communications and private, confidential information.

109.    Plaintiff and Class members did not authorize Defendant or third parties to acquire the content of their communications for purposes of sharing and selling their private information associated with their online tax returns.  Defendant is liable for compensatory, exemplary, and statutory and consequential damages arising from each such violation.

## COUNT III

**Violation of Electronic Communications Privacy Act, ("ECPA")**
**Unauthorized Divulgence by Electronic Communications Service**
**18 U.S.C. § 2511(3)(a)**
**(On Behalf of Plaintiff, the Nationwide Class, and the New York Sub-Class)**

110.    Plaintiff, on behalf of the Nationwide Class and the New York Sub-Class, re-alleges all of the foregoing allegations as if fully set forth herein.

111.    The ECPA Wiretap statute provides that "a person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication (other than one to such person or entity, or an agent thereof) while in transmission on that service to any person or entity other than an addressee or intended recipient of such communication or an agent of such addressee or intended recipient." 18 U.S.C. § 2511(3)(a).

112.    **Electronic Communication Service**.  An "electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

24

113.   Defendant's Facebook platform, internet service and Pixel, as installed on the websites of online tax filing services, constitute electronic communication services.  Defendant, the world's largest social media company, and the electronic, online services, provide to users thereof the ability to send or receive electronic communications. Defendant's Pixel used on the portals of online taxpayer service providers, as discussed above, intercepted and transmitted electronically communications regarding Plaintiff's and Class Members' taxpayer information and tax returns, including their private financial information.

114.   **Intentional Divulgence**. Defendant intentionally designed the Pixel and its platform features and was or should have been aware that it could and did intercept and divulge Plaintiff's and Class Members' private information.

115.   **While in Transmission**. Upon information and belief, Defendant's interception, transmission, and divulgence of the contents of Plaintiff's and Class Members' tax return communications was contemporaneous with the online taxpayer service providers through which they directed their communications that Defendant intercepted via its tracking Pixel.

116.   Defendant divulged the contents of Plaintiff's and Class Members' aforesaid related electronic communications without their authorization. Defendant intercepted, tracked, stored, and used, and also divulged the contents of Plaintiff's and Class Members' aforesaid related electronic communications to third parties without Plaintiff's and Class Members' consent and/or authorization.

117.   **Exceptions do not apply**. In addition to the exception for communications directly to an ECS or an agent of an ECS, the Wiretap Act states that "[a] person or entity providing electronic communication service to the public may divulge the contents of any such communication as follows:

        a.     "as otherwise authorized in section 2511(2)(a) or 2517 of this title;"

        b.     "with the lawful consent of the originator or any addressee or intended recipient of such communication;"

c.   "to a person employed or authorized, or whose facilities are used, to forward such communication to its destination;" or

d.   "which were inadvertently obtained by the service provider and which appear to pertain to the commission of a crime, if such divulgence is made to a law enforcement agency."

18 U.S.C. § 2511(3)(b)

118.   Section 2511(2)(a)(i) provides:

It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of a provider of wire or electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of that service, except that a provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

119.   Defendant's conduct, including its electronic interception and consequent communications to third parties, was not authorized by 18 U.S.C. § 2511(2)(a)(i) in that it was neither: (1) a necessary incident to the rendition of the online taxpayers' tax return service; nor (2) necessary to the protection of the rights or property of Defendant.

120.   Section 2517 of the ECPA relates to investigations by government officials and has no relevance here.

121.   Defendant's interception and divulgence of the contents of said taxpayers' private information and related communications via its Pixel was not done "with the lawful consent of the originator or any address as or intended recipient of such communication[s]." As alleged above: (a) Plaintiff and Class Members did not authorize Defendant to divulge the contents of their confidential, private information and related tax return communications; and (b) Defendant did not procure the "lawful consent" from Plaintiff and Class Members to intercept or exchange such information.

122.   Moreover, Defendant divulged the contents of Plaintiff's and Class Members' confidential communications through individuals who are not "person[s] employed or whose facilities are used to forward such, communication to its destination."

123.   The contents of Plaintiff's and Class Members' confidential, private communications did not appear to pertain to the commission of a crime, and Defendant did not divulge the contents of their communications to a law enforcement agency.

124.   As a result of the above actions and pursuant to 18 U.S.C. § 2520, the Court may assess statutory damages; preliminary and other equitable or declaratory relief as may be appropriate; punitive damages in an amount to be determined by a jury; and a reasonable attorney's fee and other litigation costs reasonably incurred.

<div align="center">

**COUNT IV**
**Violation of Title II of the Electronic Communications Privacy Act**
**18 U.S.C. § 2702, *et seq*.**
**(Stored Communications Act)**
**(On Behalf of Plaintiff, the Nationwide Class, and the New York Sub-Class)**

</div>

125.   Plaintiff, on behalf of the Nationwide Class and the New York Sub-Class, re-alleges all of the foregoing allegations as if fully set forth herein.

126.   The ECPA further provides that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

127.   **Electronic Communication Service.** ECPA defines "electronic communications service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

128.   Defendant, via its Pixel and web platform, intentionally procures, stores, transmits, and embeds Plaintiff and Class Members' private online tax return and related financial information on tax returns filed online, which qualifies as an Electronic Communication Service.

129.   **Electronic Storage**. ECPA defines "electronic storage" as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic

transmission thereof" and "any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17).

130.    Defendant stores the content of Plaintiff's and Class Members' aforesaid private online tax return and related financial communications on its platform, servers and files associated with it.

131.    Defendant knowingly divulges the contents of Plaintiff's and Class Members' said private and confidential communications to third parties without their authorization or informed consent.

132.    **Exceptions Do Not Apply**. Section 2702(b) of the Stored Communication Act provides that an electronic communication service provider "may divulge the contents of a communication—"

a.    "to an addressee or intended recipient of such communication or an agent of such addressee or intended recipient."

b.    "as otherwise authorized in Section 2517, 2511(2)(a), or 2703 of this title;"

c.    "with the lawful consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of remote computing service;"

d.    "to a person employed or authorized or whose facilities are used to forward such communication to its destination;"

e.    "as may be necessarily incident to the rendition of the service or to the protection of the rights or property of the provider of that service;"

f.    "to the National Center for Missing and Exploited Children, in connection with a reported submission thereto under section 2258A."

g.    "to law enforcement agency, if the contents (i) were inadvertently obtained by the service provider; and (ii) appear to pertain to the commission of a crime;"

h.    "to a governmental entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of communications relating to the emergency"; or

i. "to a foreign government pursuant to an order from a foreign government that is subject to an executive agreement that the Attorney General has determined and certified to Congress satisfies Section 2523."

133. Defendant did not divulge the contents of Plaintiff's and Class Members' aforesaid online communications to "addressees," "intended recipients," or "agents" of any such addressees or intended recipients of Plaintiff and Class Members.

134. Section 2517 and 2703 of the ECPA relate to investigations by government officials and have no relevance here.

135. Section 2511(2)(a)(i) provides:

It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of a provider of wire or electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of that service, except that a provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

136. Defendant's repeated use, storage, transmissions, and divulgence of the contents of Plaintiff's and Class Members' aforesaid online tax return related information and communications secured via the Pixel to third parties was not authorized by 18 U.S.C. § 2511(2)(a)(i) in that it was neither: (1) a necessary incident to the lawful rendition of the Defendant's services; nor (2) necessary to the protection of the rights or property of Defendant.

137. Section 2517 of the ECPA relates to investigations by government officials and has no relevance here.

138. Defendant's aforesaid practice, actions, and conduct was not done "with the lawful consent of the originator or any addresses or intend recipient of such communication[s]." As alleged above: (a) Plaintiff and Class Members did not authorize Defendant to divulge the contents of their communications and any information intercepted or transmitted via its Pixel; and (b) Defendant did not procure the "lawful consent" from Plaintiff or Class members to store or divulge said information collected via its tracking Pixel.

139.    Moreover, Defendant divulged or shared the contents of Plaintiff's and Class Members' aforesaid communications to individuals or entities who are not "person[s] employed or whose facilities are used to forward such, communication to its destination."

140.    The contents of Plaintiff's and Class Members' online tax return related communications did not appear to pertain to the commission of a crime, and Defendant did not divulge the contents of their communications to a law enforcement agency.

141.    As a result of the above actions and pursuant to 18 U.S.C. § 2520, the Court may assess statutory damages; preliminary and other equitable or declaratory relief as may be appropriate; punitive damages in an amount to be determined by a jury; and a reasonable attorney's fee and other litigation costs reasonably incurred.

## COUNT V

**Violation of The California Invasion of Privacy Act ("CIPA")**
**California Penal Code § 632**
**(On Behalf of Plaintiff and the Nationwide Class)**

142.    Plaintiff, on behalf of the Nationwide Class and, the New York Sub-Class, re-alleges all of the foregoing allegations as if fully set forth herein.

143.    The California Invasion of Privacy Act is codified at Cal. Penal Code §§ 630 to 638. The Act begins with its statement of purpose:

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

Cal. Penal Code § 630. The Act bars, and establishes penalties for both the interception and recording of private communications.

144.    Cal. Penal Code § 631(a) provides for the imposition of a fine of up to $2,500 for:

Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable . . . .

145.    Cal. Penal Code § 632(a) provides, in pertinent part:

A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars . . . .

146.    A defendant must show it had the consent of all parties to a communication.

147.    Meta maintains its principal place of business in California; designed, contrived and effectuated its tracking Pixel technology scheme to intercept, track, record, store, transmit, and exploit for financial gain the aforesaid private and confidential consumer communications while they were engaging online with online tax preparer service providers to prepare and file their tax returns online and has adopted California substantive law to govern its relationship with its users.

148.    At all relevant times, Meta's conduct, and communications were without authorization and informed consent from the Plaintiff.

149.    Meta's Pixel and related code – both backend and frontend – constitute an "electronic amplifying or recording device" under the CIPA, and the data its Pixel collects that Meta exploits for pecuniary gain is "confidential communications."  Plaintiff and Class members had, at all times material, an objectively reasonable expectation of privacy and confidentiality of their online tax return filing information.

150.    Plaintiff has suffered loss by reason of these violations, including, but not limited to, violation of his rights to privacy and loss of value in his personally identifiable information.

151.     Pursuant to California Penal Code § 637.2, Plaintiff has been injured by the violations of California Penal Code § 632, *et seq.*, and seeks damages for the greater of $5,000 or three times the amount of actual damages, for each and every instance of violation apiece, and as to Plaintiff and each Class Member, each of them individually, as well as injunctive relief.

<div align="center">

**COUNT VI**
**Violation of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
**(On Behalf of Plaintiff and the Nationwide Class)**

</div>

152.     Plaintiff, on behalf of the Nationwide Class, re-alleges all of the foregoing allegations as if fully set forth herein.

153.     Defendant is a "person" as that defined by Cal. Bus. & Prof. Code § 17201.

154.     Defendant violated the California Unfair Competition Law ("UCL"), §§ 17200, et seq., by engaging in unlawful, unfair, and deceptive business acts and practices as alleged above by using, and exploiting or divulging to third persons the private confidential financial information of Plaintiff and class members, and without the knowledge of Plaintiff and the Class intercepting, collecting, using, and exploiting the private confidential information of Plaintiff and the Class.

155.     Defendant engaged in unlawful business practices through its numerous violations of law, including violations of California Penal Code §§ 631 and 632, 18 U.S.C. § 2510, *et seq.*, 18 U.S.C. § 2511(3)(a), and 18 U.S.C. § 2702, *et seq*.

156.     Defendant's aforesaid surreptitious conduct, deception, and omissions respecting Plaintiff and the Class were material because they were likely to deceive reasonable individuals about Defendant's adherence to its own stated and publicized privacy policies and procedures and their reasonable expectations of the privacy of their tax returns filed online.

157.     Defendant's conduct, as described above, was unfair in that it prevented the making of fully informed decisions by consumers, such as Plaintiff and the members of the Class, regarding which online tax preparation services to use and prevented Plaintiff and the Class from making fully informed decisions regarding the communication of personal financial information

to online tax preparation services.

158.   Defendant intended to deceive or mislead Plaintiff and the Class, and induced them.

159.   Defendant's actions constituted intentional, knowing, and malicious violations of the UCL in reckless disregard of the rights of Plaintiff and the Class.

160.   As a direct and proximate result of Defendant's violations of the UCL, Plaintiff and the Class sustained actual losses and damages as described herein.

161.   Plaintiff and the Class seek restitution, injunctive relief, and other and further relief as the Court may deem just and proper. To the extent any of these remedies are equitable, Plaintiff seeks them in the alternative to any adequate remedy at law they may have.

162.   Plaintiff brings this cause of action on behalf of all Class Members pursuant to UCL §17203, which provides for and authorizes extraterritorial application of the UCL.

## COUNT VII

**Violation of the New York Deceptive and Unfair Trade Practices Act**
**N.Y. Gen. Bus. Law § 349**
**(On Behalf of Plaintiff and the New York Sub-Class)**

163.   Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

164.   Pursuant to NY GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state" are unlawful.

165.   Any person, such as Plaintiff, who has been injured by reason of a violation of NY GBL § 349 may bring an action to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. At the discretion of the court, the award of damages may be trebled, in addition to one thousand dollars per violation, upon a finding that the defendant's violation of NY GBL § 349 was willful or knowing. The court may award reasonable attorneys' fees to a prevailing plaintiff.

166.   Defendant violated NY GBL § 349 by surreptitiously intercepting, collecting, transmitting, sharing, using, and exploiting for profit Plaintiff and Class members' private

confidential tax return and related financial information, without required authorization or consent.

167.    Defendant's deceptive acts and practices and related misrepresentations and omissions regarding the interception, transmission, collection, storage, and exploitation of the personal financial data of Plaintiff and the Class were unlawful and violative of the privacy rights and positions of Plaintiff and the Class.

168.    Defendant's conduct has caused, and continues to cause, immediate and irreparable injury to Plaintiff and the Class and will continue to cause such harm unless enjoined by this Court.

## COUNT VIII

### Unjust Enrichment
### (On Behalf of Plaintiff, the Nationwide Class, and the New York Sub-Class)

169.    Plaintiff, on behalf of the Nationwide Class and, New York Sub-Class respectively, re-alleges all of the foregoing allegations as if fully set forth herein.

170.    Defendant benefits from the use of Plaintiff's and Class Members' aforesaid confidential and private information, and unjustly retained those benefits at their expense.

171.    Plaintiff and Class Members conferred a benefit upon Defendant in the form of confidential and private information that Defendant tracked and collected from Plaintiff and Class Members and, among other things, also disclosed, without their consent, to third parties and without authorization and proper compensation. Defendant knowingly collected and used this information for pecuniary gain, providing Defendant and third parties with economic, intangible, and other benefits, including substantial monetary compensation.

172.    Defendant's conduct damaged Plaintiff and Class Members, all without providing any commensurate compensation to Plaintiff and Class Members.

173.    The benefits that Defendant derived from Plaintiff and Class Members were not offered by Plaintiff and Class Members gratuitously and rightly belong to Plaintiff and Class Members. It would be inequitable under unjust enrichment principles in California, New York,

and every other state for Defendant to be permitted to retain any of the profit or other benefits wrongly derived from the unfair and unconscionable methods, acts, trade practices and deceptive conduct alleged in this Complaint.

174.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds that Defendant received, and such other relief as the Court may deem just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the proposed Class, prays for relief and judgment against Defendant as follows:

A.    certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representatives of the Class, and designating Plaintiff's counsel as Class Counsel;

B.    declaring that Defendant's conduct violates the laws referenced herein;

C.    finding in favor of Plaintiff and the Class on all counts asserted herein;

D.    awarding Plaintiff and the Class compensatory damages and actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

E.    awarding Plaintiff and the Class appropriate relief, including actual, nominal and statutory damages;

F.    awarding Plaintiff and the Class punitive damages;

G.    awarding Plaintiff and the Class civil penalties;

H.    granting Plaintiff and the Class declaratory and equitable relief, including restitution and disgorgement;

I.    enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

J.    awarding Plaintiff and the Class the costs of prosecuting this action, including expert witness fees;

K.      awarding Plaintiff and the Class reasonable attorneys' fees and costs as allowable

by law;

L.      awarding pre-judgment and post-judgment interest; and

M.      granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated:  February 17, 2023                       Respectfully submitted,

                                                _/s/ Stephen R. Basser_
                                                   Stephen R. Basser

                                                Stephen R. Basser (121590)
                                                sbasser@barrack.com
                                                Samuel M. Ward (216562)
                                                sward@barrack.com
                                                **BARRACK, RODOS & BACINE**
                                                600 West Broadway, Suite 900
                                                San Diego, CA  92101
                                                Telephone:     (619) 230-0800
                                                Facsimile:     (619) 230-1874

                                                Andrew J. Heo*
                                                aheo@barrack.com
                                                **BARRACK RODOS & BACINE**
                                                3300 Two Commerce Square
                                                2001 Market Street
                                                Philadelphia, PA 19103
                                                Telephone: (215) 963-0600
                                                Facsimile: (215) 963-0838

                                                Eve H. Cervantez (SBN 164709)
                                                ecervantez@altshulerberzon.com
                                                Connie K. Chan (SBN 284230)
                                                cchan@altshulerberzon.com
                                                **ALTSHULER BERZON LLP**
                                                177 Post Street, Suite 300
                                                San Francisco, CA 94108
                                                Telephone: (415) 421-7151
                                                Facsimile : (415) 362-8064

36

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

John G. Emerson*
jemerson@emersonfirm.com
**EMERSON FIRM, PLLC**
2500 Wilcrest Drive, Suite 300
Houston, TX  77042
Telephone: (800) 551-8649
Facsimile: (501) 286-4659

* Application for admission *Pro Hac Vice* forthcoming

*Attorneys for Plaintiff C.P.*

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28